ORAL ARGUMENT NOT YET SCHEDULED
No. 23-7141 & No. 23-7145

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

Samuel Shanks,
     Plaintiff-Appellant,

v.

International Union of Bricklayers and Allied Craftworkers,
     Defendant-Appellee.

On Appeal from the U.S. District Court for the District of Columbia
Civil Action No. 1:23-cv-00311-CCK

Taylor Lambert,
     Plaintiff-Appellant

v.

International Union of Bricklayers and Allied Craftworkers,
     Defendant-Appellee.

On Appeal from the U.S. District Court for the District of Columbia
Civil Action No. 1:23-cv-00309-CCK

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLANTS AND IN FAVOR OF REVERSAL

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

GAIL S. COLEMAN
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2920
gail.coleman@eeoc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### 1. Parties and Amici

Except for the following, all parties, intervenors, and amici appearing before the district court and in this Court are listed in the Opening Brief of Appointed *Amicus Curiae* in Support of Appellants. The Equal Employment Opportunity Commission ("EEOC") files this brief as amicus curiae. The EEOC did not participate in the district court.

### 2. Rulings Under Review

References to the rulings at issue appear in the Opening Brief of Appointed *Amicus Curiae* in Support of Appellants.

### 3. Related Cases

The cases on review were not previously before this Court but were before the U.S. District Court for the District of Columbia. *See Shanks*, No. 1:23-cv-00311-CKK (D.D.C.); *Lambert*, No. 1:23-cv-00309-CKK (D.D.C.). A related case, *Moseley v. International Union of Bricklayers and Allied Craftworkers*, No. 1:23-cv-2109 (D.D.C.), is pending in the U.S. District Court for the District of Columbia. *Moseley* arises from the same facts as the instant cases and is against the same defendant.

/s/ Gail S. Coleman
GAIL S. COLEMAN

Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M. Street, N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2920
gail.coleman@eeoc.gov

September 13, 2024

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases ......................................... i

    1.  Parties and Amici .................................................................... i

    2.  Rulings Under Review ........................................................... i

    3.  Related Cases ......................................................................... i

Table of Contents ................................................................................ iii

Table of Authorities ............................................................................ v

Glossary of Abbreviations ................................................................ viii

Statement of Interest .......................................................................... 1

Statement of the Issue ........................................................................ 2

Statement of the Case ......................................................................... 2

  A.  Statement of the Facts ................................................................ 2

  B.  District Court's Decisions ........................................................ 10

    1.  *Lambert* ............................................................................... 10

    2.  *Shanks* ................................................................................. 12

Argument .......................................................................................... 14

  Plaintiffs pled plausible disparate impact claims. ......................... 14

    A.  A disparate-impact plaintiff does not have to plead a prima facie case or provide proof that would prevail at summary judgment or trial to survive a motion to dismiss. .................................................. 14

    B.  Plaintiffs plausibly alleged that BAC's policy mandating that all employees be vaccinated or excused by the same deadline—despite

different compliance periods and unequal information—caused an unlawful disparate impact on Black employees.................................17

1.  The plaintiffs identified a specific policy as the basis for their complaints. ............................................................................18

2.  The plaintiffs plausibly alleged that BAC's policy had a disparate impact on Black employees as a group. ...........................................19

3.  The plaintiffs plausibly alleged that the challenged policy caused the disparate impact. ..........................................................21

    a.  Plaintiffs' allegations of causation satisfied their burden at the pleading stage.................................................................22

    b.  The district court erred in holding that noncompliance with a policy, where choice played any role, defeats causation in a disparate-impact claim. ................................................................26

Conclusion.................................................................................30

Certificate of Compliance ....................................................................32

Certificate of Service ..........................................................................33

Addendum ..........................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................16, 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................16

*Bolden-Hardge v. Off. of Cal. State Controller*,
63 F.4th 1215 (9th Cir. 2023)..................................................27, 28

*Boykin v. Fenty*,
650 F. App'x 42 (D.C. Cir. 2016)...................................................20

*Brnovich v. Democratic Nat'l Comm.*,
594 U.S. 647 (2021)....................................................................21

*Brown v. Whole Foods Mkt. Grp., Inc.*,
789 F.3d 146 (D.C. Cir. 2015)...................................................2, 16

*Davis v. District of Columbia*,
925 F.3d 1240 (D.C. Cir. 2019)................................................18, 21

*Divine Equality Righteous v. Overbrook Sch. for the Blind*,
Civ. A. No. 23-846, 2023 WL 4763994 (E.D. Pa. July 26, 2023)...................25

*EEOC v. Peoplemark, Inc.*,
732 F.3d 584 (6th Cir. 2013)...................................................17, 18

*EEOC v. Shell Oil Co.*,
466 U.S. 54 (1984)......................................................................14

*EEOC v. Trailways, Inc.*,
530 F. Supp. 54 (D. Colo. 1981)....................................................27

*Figueroa v. Pompeo*,
    923 F.3d 1078 (D.C. Cir. 2019)........................................................................20

*Garcia v. Spun Steak Co.*,
    998 F.2d 1480 (9th Cir. 1993)........................................................................28

*Gordon v. U.S. Capitol Police*,
    778 F.3d 158 (D.C. Cir 2015)........................................................................17

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971)..........................................................................14, 26, 27

*Jenkins v. N.Y.C. Transit Auth.*,
    646 F. Supp. 2d 464 (S.D.N.Y. 2009) ...........................................................28

*Keren Kayemeth LeIsrael-Jewish Nat'l Fund v. Educ. for a Just Peace
    in the Middle East*, 66 F.4th 1007 (D.C. Cir. 2023) .........................................20

*Lewis v. City of Chicago*,
    560 U.S. 205 (2010)........................................................................................15

*Moseley v. Int'l Union of Bricklayers & Allied Craftworkers*,
    No. 1:23-cv-2109 (D.D.C.)................................................................................3

*Muldrow v. City of St. Louis*,
    601 U.S. 346 (2024)..................................................................................28, 29

*NAACP v. North Hudson Reg'l Fire & Rescue*,
    665 F.3d 464 (3d Cir. 2011) ...........................................................................27

*Nanko Shipping, USA v. Alcoa, Inc.*,
    850 F.3d 461 (D.C. Cir. 2017)........................................................................15

*Peccia v. Cal. Dep't of Corr. & Rehab.*,
    No. 21-16962, 2024 WL 1985817 (9th Cir. May 1, 2024)..............................28

*Reyes v. Waples Mobile Home Park Ltd. P'ship*,
    903 F.3d 415 (4th Cir. 2018)....................................................................20, 27

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)........................................................................................16

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Comtys. Project, Inc.*,
 576 U.S. 519 (2015).................................................................21, 22

*Wards Cove Packing Co., Inc. v. Atonio*,
 490 U.S. 642 (1989)......................................................................22

*Watson v. Fort Worth Bank & Trust*,
 487 U.S. 977 (1988).............................................................15, 19, 22

*Wright v. Eugene & Agnes E. Meyer Found.*,
 68 F.4th 612 (D.C. Cir. 2023) ...........................................................2

*Wu v. Special Counsel*,
 No. 14-7159, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015)...................16, 20

**Statutes**

Title VII of the Civil Rights Act of 1964,

 42 U.S.C. §§ 2000e et seq. ..........................................................1, 9,

 42 U.S.C. § 2000e-2(k) .............................................................14, 15

 42 U.S.C. § 2000e-2(k)(1)(A)(i) ....................................................15, 30

 42 U.S.C. § 2000e-2(k)(1)(A)(ii).........................................................15

 42 U.S.C. § 2000e-2(k)(1)(B)(i)..........................................................27

**Other Authorities**

Federal Rule of Appellate Procedure 29(a) ....................................................2, 32

Federal Rule of Appellate Procedure 32.........................................................32

Federal Rule of Civil Procedure 8(a)(2) ............................................................15

Federal Rule of Civil Procedure 12(b)(6) ..........................................2, 10, 16, 17

## GLOSSARY OF ABBREVIATIONS

BAC ......................International Union of Bricklayers & Allied Craftworkers

Staff Union....................Local 2, Office & Professional Employees Int'l Union

EEOC........................................Equal Employment Opportunity Commission

Title VII ... Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission ("EEOC") with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. The plaintiffs in these consolidated cases allege that their employer, International Union of Bricklayers & Allied Craftworkers ("BAC"), enforced a policy that caused a disparate impact on Black employees by requiring that all employees be vaccinated against COVID-19 (or obtain a religious or disability-based exemption), by the same deadline, although most Black employees received less information and considerably less time to meet the deadline than did most White employees. The district court dismissed both cases on the pleadings, holding that the plaintiffs could not state a claim because they had voluntarily chosen not to get vaccinated, despite purportedly having an equal opportunity to do so. In the EEOC's view, the court erred in several respects, both legal and factual, including by requiring proof rather than plausible allegations and suggesting that any individuals who "voluntarily" did not comply with the policy cannot establish causation in a disparate impact case.

The EEOC has a substantial interest in the proper interpretation of Title VII, including the threshold question of what suffices, at the pleading stage, to constitute a plausible violation of the statute. Accordingly, the EEOC files this brief pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUE[1]

Did the plaintiffs plausibly allege that BAC's COVID-19 vaccination policy, with its tiered rollout and unequal distribution of information, caused an unlawful disparate impact on Black employees, where five of the six employees whom BAC penalized for noncompliance — and all three of the employees terminated — were Black?

## STATEMENT OF THE CASE

### A.   Statement of the Facts[2]

Samuel Shanks and Taylor Lambert are former BAC employees who are both Black. Shanks began working for BAC in February 2001 and was

---

[1] The EEOC takes no position on any other issues in these appeals.

[2]  As did the district court, JA125-JA126, JA228-JA229, we follow the D.C. Circuit's instruction "to consider a pro se litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015). Consistent with the standard of review for an order granting dismissal under Rule 12(b)(6), we present these facts in the light most favorable to the plaintiffs and make all

an accountant at the time of his termination. JA37, JA42. Lambert, his niece, began as a temporary employee in 2015 and became an administrative bookkeeper in November 2020. JA159, JA163. Neither of their positions required travel.

On June 7, 2021,[3] BAC emailed all employees regarding COVID-19. JA 44, JA72. The email encouraged vaccination in general and mandated it for employees who traveled (subject to approved disability-based or religious exemptions). JA 44, JA72-JA76. Monetta Moseley, shop steward of the internal union that bargained with management on behalf of BAC employees ("Staff Union"), asked whether employees who did not travel would also be subject to a mandatory vaccination requirement.[4] JA45, JA157. BAC management informed her that they would not. JA45, JA157.

---

reasonable inferences in their favor. *See Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

[3] The policy is dated June 7, so the EEOC relies on that date for purposes of counting. *See* JA72. Lambert alleges that BAC actually distributed its policy on June 6. JA21.

[4] Moseley, who is Black, was also terminated in connection with the mandatory vaccination policy. JA37. Her lawsuit is pending in district court. *See Moseley v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 1:23-cv-2109 (D.D.C.).

3

As an inaugural member of the White House Covid-19 Community Corps, JA35, JA200-JA201, BAC was aware that there was greater vaccine hesitancy in the Black population than in the White population, JA35, JA170. Its partnership with the White House gave BAC access to a live question-and-answer vaccine-hesitancy webinar on June 16 with the Director of the National Institutes of Health, designed to encourage individuals to get vaccinated. JA45, JA171-JA172. BAC invited only those employees who traveled to attend this webinar. JA45, JA171-JA172.

On August 19, over the Staff Union's objections, BAC emailed all employees again, notifying them that everyone, whether they traveled or not, must be fully vaccinated by October 4 unless they had an approved disability-based or religious exemption. JA7, JA45. BAC defined "fully vaccinated" to mean "two weeks after receiving a second dose in a two-dose series, such as the Pfizer or Moderna vaccines, or two weeks after receiving a single dose of a one-dose vaccine, such as the Johnson & Johnson vaccine." JA9. Failure to be fully vaccinated by October 4 without requesting an exemption "as soon as possible and, absent extenuating circumstances, no later than September 13," the policy said, would result in

4

a one-week suspension without pay. JA9. An employee who was not fully vaccinated after the one-week suspension would be terminated. JA9.

Employees who traveled—75% of White employees and 11% of Black employees—knew since June 7 that they would have to comply with the vaccine policy. JA45, JA72-JA76, JA171. Thus, the October 4 deadline gave them 98 days to request an exemption and 119 days to comply with the mandate. Employees who did not travel—25% of White employees and 89% of Black employees—had only 25 days to request an exemption and 46 days to be fully vaccinated. They had only four days to start the two-dose Moderna vaccine, 11 days to start the two-dose Pfizer vaccine, and 18 days to receive the one-dose Johnson & Johnson vaccine. JA46, JA174-JA175.

BAC issued social media posts encouraging all employees to get vaccinated. JA202-JA207. However, even though it had the ability to do so, BAC did not provide a recording of the vaccine-hesitancy webinar to the employees newly required to become vaccinated. JA172-JA173. Nor did it hold mandatory full-staff meetings on its expanded vaccination policy, although it had held such meetings on other issues. JA34, JA46.

Neither Lambert nor Shanks submitted a request for a religious or disability-based exemption to the mandatory-vaccination requirement,

5

although Lambert did draft a request based on her religious beliefs. JA215-JA216. BAC asked that any employee requesting a religious exemption "attach any documentation, for example, letter from your religious leader, that you believe supports your request for an accommodation when submitting" an exemption request, and Lambert believed that she needed a personal letter from her pastor. JA189.[5] She did not obtain such a letter before September 13 and thus missed the deadline. JA189. Lambert was also hesitant to invoke the exemption process because her uncle previously had a negative experience requesting a disability accommodation. JA164, 167, 182, 189. Finally, she alleged that she did not seek an exemption because the Staff Union had instructed employees to "direct[] all questions, comments, and concerns … to and through [it] as they actively worked on our behalf to fight for a just policy." JA157.

The Staff Union, Lambert alleged, "attempt[ed] to articulate the disparate impact the policy had on minorities and possible actions to accommodate everyone's safety." JA158. She and Shanks alleged that the

---

[5] To obtain a disability-based exemption, employees had to submit a medical provider's certification that the employee had a "medical disability that contraindicates any COVID-19 vaccination." JA221.

Staff Union repeatedly sought to meet with management to discuss the deadlines and the possibility of allowing testing in lieu of vaccination. JA47, JA157, JA176. The general counsel postponed the meeting twice, until after September 13. JA157-JA158. When management finally met with the Staff Union on September 20, the general counsel and human resources manager said they would not negotiate regarding the exemption deadline because the deadline had already passed. JA47, JA177. BAC's delay, Lambert alleged, "prevent[ed] [her] from being able to ask for the extension by the deadline." JA158.

On October 1, the Staff Union advised management that some employees had received their first shot but would not be fully vaccinated by October 4. JA46-JA47. Management agreed to a grace period for such employees until October 18, suspending them and requiring that they take annual leave until after they were fully vaccinated. JA47, JA150.

On October 4, the vaccination deadline, both plaintiffs emailed Human Resources stating that they were not vaccinated. JA3, JA148. Shanks wrote that he had "Vaccine Hesitancy due to my pre-existing medical conditions and the effects that the vaccine has caused others in my situation." JA14. He added that it was "not only inconsiderate but quite

7

egregious" to give employees only four days to decide whether to have the

Moderna vaccine," and it was "especially unfair" to give employees only

25 days to speak with a healthcare professional or religious leader

regarding an exemption because the pandemic had made appointments

scarce. JA13. He stated that "Black Americans are the most vaccine hesitant

group in the US due to the well documented medical experimentation such

as the Tuskegee Experiment and experimental medical treatment on

enslaved individuals that cause general mistrust in the medical system.

Even though Black American[s] make up a significant portion of BAC

Employees, the organization provided us nothing in countering the vaccine

hesitancy that some of us may have." JA13.

Lambert's email to Human Resources said, "I have no desire to inject

myself with a vaccine that has been concocted in less than a year especially

when other employees have caught and exposed other BAC employees to

COVID, in addition to experiencing similar symptoms as the

'unvaccinated.' Therefore I will no longer be an employee at bricklayers as

a result of the company refusing to allow testing options for the 'small'

number of employees that are hesitant to getting vaccinated; contrary to

the dc gov, wmata and other companies that respect their employees and

8

their beliefs. Thank you for the opportunity. Stay safe." JA150. BAC responded to both messages by immediately blocking Lambert's and Shanks's access to their email accounts. JA47, JA184. After one week, BAC terminated them both.[6] JA43, 184.

As of October 4, six employees were not fully vaccinated. JA71, 175. All six, five of whom were Black, were adversely affected, either by being suspended or being fired. JA71, JA175. BAC ultimately terminated three employees, all Black, for not being fully vaccinated by October 4. JA 71, JA175. In late October, the Staff Union filed a class-action grievance challenging "[w]rongful termination and penalization" related to BAC's vaccination mandate. JA178, JA212, JA225. BAC denied the grievance the following month.  JA49, JA148.

 Lambert and Shanks sued under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., alleging in relevant part that BAC's mandatory vaccination policy, which included the requirement that employees be fully vaccinated or exempt by a specific deadline but was

---

[6] Although BAC asserted in litigation that Lambert had actually resigned in her October 4 email, the district court assumed for purposes of the motion to dismiss that she had not left voluntarily. JA234.

rolled out in a way that gave some employees considerably more time to prepare for that deadline than others,  discriminated against employees based on race. JA3, JA145. After BAC moved to dismiss both complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief could be granted, the district court granted the motions. JA113, JA217.

## B.    District Court's Decisions

### 1. *Lambert*

The court stated that a plaintiff in a disparate impact case "must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the disproportionate effect because of membership in a protected group." JA238-JA239 (cleaned up). Lambert, the court said, "has not presented any facts indicating that the Policy caused the disproportionate termination of Black … employees …. [S]he admits that those employees, herself included, were terminated because of their own voluntary failure to adhere to the Policy and failure to request an accommodation." JA239.

The court noted that Lambert had drafted but not submitted a religious exemption request. JA222 (erroneously stating that Lambert's

request "included a personal letter from her pastor"); JA240. She had not notified BAC of any "extenuating circumstances" that prevented her from submitting her request, the court added, JA223, and the fact that management delayed meeting with the Staff Union until after the exemption deadline had passed "did not obviate Plaintiff's own obligation to request an accommodation by the stated deadline," JA240.

The court rejected as irrelevant Lambert's allegations that "Black employees are more likely to have vaccine hesitancy" than White employees, that BAC was aware of this fact, and that BAC therefore should have provided Black employees with "additional resources or more time to comply with the Policy." JA239. BAC did provide information to all of its employees, the court said, and encouraged all of them to get vaccinated. JA239-JA240.

"Although statistics show that Black employees are more likely to have vaccine hesitancy," the court reasoned, "it does not necessarily follow that imposing the Vaccine Policy caused certain Black employees' termination, as they had equal opportunity to seek accommodation as their white counterparts or otherwise comply with the policy." JA240. Further, the court said, "although there were more white employees who had

advance notice of the vaccine requirement due to their engaging in work-related travel and access to a specific vaccine hesitancy webinar, it again does not follow that the Vaccine Policy caused certain Black employees' termination." JA240-JA241.

Plaintiff and two other Black employees were terminated because they "chose not to be vaccinated or otherwise submit a timely request for accommodation," the court said. JA241. It concluded, Lambert "has failed to plausibly allege that the Policy had a disparate impact." JA241.

### 2. Shanks

Shanks, the court held, did not plead facts plausibly alleging that BAC applied the mandatory vaccination policy in a discriminatory manner.[7] JA135. The court rejected as "not pertinent" Shanks's allegation that "because some individuals or demographic groups may face barriers to receiving a COVID-19 vaccination, some employees may be more likely to be negatively impacted by a vaccination requirement." JA135. Nor did the court consider relevant the allegation that a majority of Black

---

[7] The district court erroneously treated Shanks's complaint as stating only a disparate treatment claim. JA135. In fact, Shanks stated in his complaint that the vaccination policy would cause a disparate impact and reiterated that assertion in his opposition to BAC's motion to dismiss. JA3, JA34.

employees were given almost two and a half months less than the majority of White employees to make an "informed healthcare decision." JA135. "[T]he fact that employees who engaged in work-related travel were aware that they would be subject to a vaccine mandate before all other employees were in fact subject to such a mandate does not make the Policy discriminatory," the court reasoned. JA135.

The court emphasized that Shanks did not allege that non-Black employees were treated differently if they failed to submit an exemption request or be vaccinated on time, nor did he allege that exemption requests by non-Black employees were more likely to be granted than requests by Black employees. JA135. To the contrary, the court said, Shanks "failed to plead facts that plausibly allege that he was terminated for reasons other than his violation of the policy." JA135. Thus, the court concluded, he had not pled facts sufficient to satisfy the elements of a Title VII race-discrimination claim. JA135.

# ARGUMENT

## Plaintiffs pled plausible disparate impact claims.

Title VII was enacted to "achieve equality of employment opportunities," *Griggs v. Duke Power Co.*, 401 U.S. 424, 429 (1971), by "root[ing] out discrimination in employment," *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984). Among the statute's prohibitions are employment practices that "cause[] a disparate impact on the basis of race, color, religion, sex, or national origin" that are not "job related . . . and consistent with business necessity." 42 U.S.C. § 2000e-2(k).

In this case, Lambert and Shanks plausibly alleged that BAC's mandatory vaccination policy, with its short compliance period and reduced vaccine-hesitancy information for non-traveling employees, had a disparate impact on Black employees, in violation of Title VII. The district court made factual and legal errors in holding otherwise and dismissing the plaintiffs' disparate-impact claims.

### A.  A disparate-impact plaintiff does not have to plead a prima facie case or provide proof that would prevail at summary judgment or trial to survive a motion to dismiss.

To prove a disparate-impact claim at summary judgment or trial, a plaintiff "must begin by identifying the specific employment practice that

is challenged," *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). and then show that the practice "'causes a disparate impact' on one of the prohibited bases," *Lewis v. City of Chicago*, 560 U.S. 205, 212 (2010) (quoting 42 U.S.C. § 2000e-2(k)). One way to establish causation is to "offer statistical evidence of a kind and degree to show that the practice in question has caused the exclusion of [employees] . . . because of their membership in a protected group." *Watson*, 487 U.S. at 994. The employer may defend against this showing by "demonstrat[ing] that the challenged practice is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). If the employer satisfies that burden, the plaintiff may show the existence of an alternative employment practice that the employer refuses to adopt. 42 U.S.C. § 2000e-2(k)(1)(A)(ii).

A plaintiff need not satisfy the summary-judgment/trial standard at the motion-to-dismiss stage. *See Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017) ("The burden at the summary judgment stage and at trial is different and substantially more onerous than the pleading burden."). Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

15

The Supreme Court refined this pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), explaining that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[8] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is "plausible," the Court held, when the allegations in the complaint allow for "the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint need not establish a "probability" of liability. *Twombly*, 550 U.S. at 556.

Nor does a complaint need to plead a prima facie case. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (addressing pleading standards in employment discrimination cases). That is because the prima facie case is an evidentiary standard, not a pleading standard. *Id.* at 510. In sum, as the D.C. Circuit has recognized, "neither prima facie proof nor detailed factual allegations are necessary to withstand a Rule 12(b)(6) motion." *Wu v. Special Counsel*, No. 14-7159, 2015 WL 10761295, at *1 (D.C.

---

[8] As discussed *supra* in footnote 2, a pro se "complaint" encompasses more than the complaint itself; a district court must "consider a pro se litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss." *Brown*, 789 F.3d at 152.

16

Cir. Dec. 22, 2015); *see also Gordon v. U.S. Capitol Police*, 778 F.3d 158, 162 (D.C. Cir 2015) (plaintiff "need not plead facts showing each of [the prima facie] elements in order to defeat a motion under Rule 12(b)(6)").

**B.** **Plaintiffs plausibly alleged that BAC's policy mandating that all employees be vaccinated or excused by the same deadline—despite different compliance periods and unequal information—caused an unlawful disparate impact on Black employees.**

The plaintiffs satisfied all requirements to state a Title VII disparate-impact claim. First, they identified a specific employment policy (the mandatory vaccination policy with its tiered rollout and unequal distribution of information but uniform vaccination/exemption deadlines) as the basis for their claims. *See EEOC v. Peoplemark, Inc.*, 732 F.3d 584, 591 (6th Cir. 2013) (plaintiffs must identify "specific employment practices" to state a disparate-impact claim). Both plaintiffs offered statistics demonstrating an adverse effect on Black employees (although they were not required to offer statistics at the pleading stage, *see infra*), and both alleged facts plausibly suggesting that the policy itself caused that adverse impact.

In holding to the contrary, the district court applied the wrong pleading standard by requiring proof rather than plausible allegations,

erroneously indicated that all employees had an equal opportunity to be vaccinated, and incorrectly reasoned that "voluntary" noncompliance with a discriminatory policy defeats a disparate-impact claim.

### 1. The plaintiffs identified a specific policy as the basis for their complaints.

The plaintiffs pled that BAC disciplined and/or fired a disproportionate number of Black employees because of a specific employment practice. They pointed to BAC's requirement that all employees obtain a COVID-19 vaccination or exemption by a fixed date or be terminated. They explained that BAC's policy and implementation process required that the specified deadlines for becoming fully vaccinated or obtaining an exemption were the same for all employees, although most White employees received notification far earlier than most Black employees.  As a result, the majority of Black employees had far less time to be vaccinated or excused. Plaintiffs also alleged that BAC gave most Black employees less information about the vaccine than most of their White counterparts. Thus, plaintiffs properly identified "specific employment practices," a necessity in alleging a disparate-impact claim. *Peoplemark*, 732 F.3d 584, 591 (6th Cir. 2013); *see also Davis v. District of*

*Columbia*, 925 F.3d 1240, 1252 (D.C. Cir. 2019) ("[P]rocesses are susceptible of challenge under disparate impact precedents"). The district court did not hold otherwise. *See* JA135, JA238.

### 2. The plaintiffs plausibly alleged that BAC's policy had a disparate impact on Black employees as a group.

The plaintiffs alleged facts plausibly suggesting a disparate impact on Black employees—proof of which would be necessary to establish their claims at summary judgment or trial. *See Watson*, 487 U.S. at 994 (setting forth three required elements for summary judgment or trial, including proof of disparate impact). They proffered statistics showing that, pursuant to its vaccine policy (with its uneven rollout), BAC punished significantly more Black employees than White employees. According to the plaintiffs' pleadings and attachments, five of six employees adversely affected by the policy requiring vaccination/exemption by specified dates were Black (83%), and all three of the employees who were terminated were Black (100%). JA71, JA175. When statistics reveal that *no* person in the plaintiff's protected category avoided the alleged disparate impact, "the 'inexorable zero' can raise an inference of discrimination even if the subgroup

19

analyzed is relatively small." *Figueroa v. Pompeo*, 923 F.3d 1078, 1085 (D.C. Cir. 2019) (citation omitted).

These allegations were more than sufficient to satisfy the requirement that plaintiffs allege a disparate impact on Black employees. At this stage of the proceedings, plaintiffs were not obligated to provide statistics, only to raise a plausible suggestion that they could prove impact in the future. *See Wu*, 2015 WL 10761295, at *2 (plaintiffs need only show "a hint that [they] ha[d] or could obtain statistical evidence" of disparity in the future); *see also Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415 (4th Cir. 2018) (sufficient for plaintiffs to allege that Latinos would be disproportionately affected by policy requiring proof of legal status; their allegation that Latinos are disproportionately likely to be undocumented satisfied their burden at the pleading stage); *Boykin v. Fenty*, 650 F. App'x 42, 44 (D.C. Cir. 2016) (dismissing complaint because it did not "*suggest*[] that policy of removing chronically homeless persons affected more disabled than non-disabled individuals, not because complaint did not actually make this showing) (emphasis added); *see also Keren Kayemeth LeIsrael-Jewish Nat'l Fund v. Educ. for a Just Peace in the Middle East*, 66 F.4th 1007, 1016 (D.C. Cir. 2023) (to survive a motion to dismiss on the pleadings, a plaintiff need only

20

"'*allege* enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's claims") (citation omitted and emphasis added). Plaintiffs' allegations more than satisfied the plausibility standard.

### 3. The plaintiffs plausibly alleged that the challenged policy caused the disparate impact.

The third required element at summary judgment or trial is proof that the specific policy or policies at issue *caused* the observed disparity. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 677 n.17 (2021) (disparate-impact claim must prove "that something besides random error is at work"); *Davis v. District of Columbia*, 925 F.3d 1240, 1251 (D.C. Cir. 2019) ("a 'robust causality requirement . . . protects defendants from being held liable for racial disparities they did not create'") (quoting *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Comtys. Project, Inc.,* 576 U.S. 519, 521 (2015)(alterations in original)). But plaintiffs need not *prove* causation at the pleading stage; they must simply allege facts rendering it plausible that they can do so after discovery. *See Iqbal*, 556 U.S. at 678. Because they have alleged that BAC gave non-traveling employees, who are predominantly Black, less time and information to comply with or seek exemption from its

vaccine mandate, and punished employees for not timely complying (JA9, JA71, JA175), plaintiffs have satisfied the pleading standard on this element as well.

### a. Plaintiffs' allegations of causation satisfied their burden at the pleading stage.

The district court erred by requiring that plaintiffs "show" causation, not merely allege facts rendering causation plausible. *See* JA238-JA239 ("A plaintiff bringing a disparate impact theory must offer statistical evidence of a kind and degree sufficient to *show* that the practice in question has caused the disproportionately adverse effect because of their membership in a protected group.") (cleaned up and emphasis added); *see also* JA238 ("The Court finds that Plaintiff has failed to *show* causation between the policy and the proffered disproportional effect.") (emphasis added). The burden to "show" causation arises at summary judgment or trial, not at the pleading stage. The district court's contrary reasoning rested on inapposite cases. *See* JA239 (citing *Watson*, 487 U.S. at 994 (discussing evidentiary standards); *Inclusive Cmtys. Project, Inc.*, 576 U.S. at 543 (review after bench trial); *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 657 (1989) (review after bench trial)).

Viewing the plaintiffs' claims through the proper lens of plausibility, both Lambert and Shanks plausibly alleged that the policy of requiring full vaccination or exemption by specified deadlines caused the observed racially disparate impact. They have alleged that BAC took adverse actions against all affected individuals because of this policy: the company suspended and/or terminated them because they were not vaccinated or excused by the appointed dates. That is not only a plausible cause; it is the company's stated reason for its actions.

Moreover, the plaintiffs' allegations and attachments explain *why* BAC's policy and implementation led to such disparate outcomes. Contrary to the district court's reasoning, the plaintiffs alleged in some detail that most of BAC's Black employees did not "ha[ve] equal opportunity to seek accommodation as their white counterparts or otherwise comply with the Policy." JA240. First, the plaintiffs alleged that unlike the majority-White group of traveling employees, who had 119 days to comply, most Black employees, who did not travel, had only 46 days. JA46, JA174-JA175, JA188. This compressed timeline, the plaintiffs alleged, made it harder for most Black employees to obtain the same medical advice as most White employees regarding whether to vaccinate and, if so, which

23

manufacturer's product to use. JA13, JA157. And if the non-traveling group of employees wanted the Moderna shot, they had to begin the vaccination series within just 4 days—no easy feat, given the scarcity of medical appointments. JA9, JA15, JA174.

Plaintiffs also alleged that the abbreviated timeline made it harder for a disproportionate number of Black employees to seek disability-based or religious exemptions. JA13, JA16, JA157. Even if every Black employee in the non-traveling group had wanted to comply with the mandatory vaccination policy, the abbreviated timeline plausibly would have made it difficult or impossible for them to do so.

Exacerbating the disparity, plaintiffs alleged, the company gave most Black employees, who are more likely to be vaccine-hesitant, fewer educational resources aimed at countering vaccination hesitancy. JA59 JA145, JA170. Both complaints alleged that BAC was a member of the White House Covid-19 Community Corps, which disseminated information to its members that the Black community as a whole had greater vaccination hesitancy than the White community. JA35, JA170. The plaintiffs cited the infamous Tuskegee experiment as an explanation for this increased reluctance to trust vaccinations. JA13, JA180. The district

court itself observed that "statistics show that Black employees are more likely to have vaccine hesitancy." JA240.

Nonetheless, the plaintiffs alleged, BAC did not provide most of its Black employees with access to the vaccine-hesitancy webinar to which it had invited 75% of its White employees, even though it possessed a recording of the webinar and could have done so. JA45, JA172, JA188. The plaintiffs plausibly suggested that because Black employees as a group needed more encouragement than White employees as a group to overcome vaccine hesitancy, the failure to provide equal resources—specifically access to the recorded webinar aimed directly at vaccine hesitancy—to the majority-Black group of employees made it more likely that fewer Black employees would comply with the vaccination mandate. JA172-173, JA190; *see Divine Equality Righteous v. Overbrook Sch. for the Blind*, Civ. A. No. 23-846, 2023 WL 4763994, at *7 (E.D. Pa. July 26, 2023) (allegations of "'vaccine hesitancy' among African Americans," coupled with allegations of statistical disparity, are sufficient to warrant "further discovery on this fact-intensive issue"). In holding that this omission was inconsequential because BAC shared information in other ways, JA239-JA240, the district court failed to appreciate the specific value of vaccine-

hesitancy resources to Black employees, as pleaded, and failed to make all reasonable inferences in favor of the plaintiffs.

In short, Plaintiffs have done more than enough to plausibly allege that BAC's vaccination requirement and its abbreviated compliance period for its majority-Black employees had a disparate race-based impact—they have gone so far as to explain why that might have been the case.

> b. **The district court erred in holding that noncompliance with a policy, where choice played any role, defeats causation in a disparate-impact claim.**

The district court held in *Lambert* and implied in *Shanks* that the plaintiffs "ha[ve] not presented any facts indicating that the Policy *caused* the disproportionate termination of Black employees" because BAC terminated them due to "their own voluntary failure to adhere to the Policy and failure to request an accommodation."  JA135, JA239. This reasoning fundamentally misunderstands causation in disparate impact cases. First, *not* complying with a policy or meeting an employer's requirement is the most common factual scenario in a disparate impact employment-discrimination case. For instance, in *Griggs v. Duke Power Co.*, 401 U.S. 424, 430-32 (1971), the prototypical Title VII disparate impact case, Black

26

employees did not satisfy the high-school diploma requirement for certain jobs. That is why the requirement affected them. *Id*; *see also Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1227-28 (9th Cir. 2023) (individual who refuses to take state employer's loyalty-oath requirement on religious grounds has alleged disparate impact claim).

The fact that individuals' "choices" may have played some role in the noncompliance that led to their terminations or suspensions does not defeat causation. *See, e.g., Griggs*, 401 U.S. at 430 n.6; *cf. Reyes*, 903 F.3d at 427-29 (Latino tenants can state disparate impact claim under Fair Housing Act where mobile park home required documentation of legal status). What the statute requires is, simply, a showing that the employer's challenged practice "causes a disparate impact." 42 U.S.C. § 2000e-2(k)(1)(B)(i).  Nor is the fact that affected individuals *could* comply with the challenged policy fatal to an impact claim. For example, Black employees who disproportionately live outside the area covered by an employer's residency requirement can state a disparate-impact claim despite not moving. *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 479-81 (3d Cir. 2011); *see also EEOC v. Trailways, Inc.*, 530 F. Supp. 54, 56, 59 (D. Colo. 1981) (finding no-beards policy had a disparate impact on Black men

because of evidence that 25% cannot shave regularly without painful disorders to the skin); *cf. Bolden-Hardge*, 63 F.4th at 1223; *Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 471 (S.D.N.Y. 2009) (individual who objects, on religious grounds, to employer's requirement that all bus drivers wear pants has alleged disparate impact claim).

While the Ninth Circuit has ruled otherwise in the context of an English-only rule, its decision is no longer good law. *See Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1487 (9th Cir. 1993) (English-only rule had no disparate impact on bilingual Hispanic employees who could "readily comply" with the rule). *Garcia* stated that not only must a plaintiff prove the adverse effects of a policy, but also must prove that the impact on the terms, conditions, or privileges of employment is "significant." *Id.* at 1486. The court thus held that the difficulty bilingual employees faced in speaking only in English was not "a burden significant enough to amount to the denial of equal opportunity." *Id.* at 1488. But the Supreme Court has since rejected a significant harm test. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 350 (2024); *see also Peccia v. Cal. Dep't of Corr. & Rehab.*, No. 21-16962, 2024 WL 1985817, at *1 (9th Cir. May 1, 2024) (acknowledging *Muldrow* sets out a new standard). Accordingly, in this case, regardless of

whether Black employees disproportionately chose not to get vaccinated or submit an exemption by the deadlines, or simply were unable to do so in time because of BAC's abbreviated timeline, the policy affected them, and their claims should proceed.

In any event, even if plaintiffs' ability to comply (or voluntary choice not to comply) were relevant to a disparate-impact claim, the district court improperly assumed that adversely-affected individuals all made voluntary decisions not to be vaccinated, rather than having insufficient time to do so or not having enough information to submit a timely, well supported religious or disability-based accommodation request. As discussed above, both plaintiffs plausibly alleged or suggested that at least some individuals may not have been able to meet the company's abbreviated timeline. *See supra* at 23-26. The court made inferences in the company's favor by assuming that all individuals remained unvaccinated and unexcused by choice.

An employer, of course, will not be liable for disparate-impact discrimination if it can prove that the challenged policy was "job related for the position in question and consistent with business necessity." 42 U.S.C.

29

§ 2000e-2(k)(1)(A)(i). Thus, should Lambert and Shanks proceed to trial and establish that the mandatory vaccination policy, with its tiered rollout and unequal information distribution, caused the disparate impact on Black employees, BAC may avoid Title VII liability by showing that it had a business necessity for its policy. But at the pleading stage, plaintiffs have done enough to state a plausible claim for relief.

## CONCLUSION

For the foregoing reasons, the judgments of the district court should be vacated and the cases remanded for further proceedings.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

DARA S. SMITH
Assistant General Counsel

s/*Gail S. Coleman*
GAIL S. COLEMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507

(202) 921-2920
gail.coleman@eeoc.gov

September 13, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) and 32(f) because it contains 5,845 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(7)(B) and D.C. Circuit Rule 32(e)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

s/*Gail S. Coleman*
GAIL S. COLEMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2920
gail.coleman@eeoc.gov

September 13, 2024

32

## CERTIFICATE OF SERVICE

I certify that on September 13, 2024, I caused the foregoing brief to be

filed in PDF format with the Clerk of Court via the appellate CM/ECF

system. I certify that all counsel of record are registered CM/ECF users,

and service will be accomplished via the appellate CM/ECF system.


s/*Gail S. Coleman*
GAIL S. COLEMAN
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
(202) 921-2920
gail.coleman@eeoc.gov

# ADDENDUM

**ADDENDUM**

All applicable statutes are contained in the Brief for Appointed *Amicus Curiae* in Support of Appellants.